REDMANN, Judge.
Ercilia Elrod LeNy appeals from the rejection on the merits of her action for nullity of a definitive judgment which, 218 So.2d 83 (La.App.1969), declared certain property to be community, annulled as simulated its transfer by her mother to herself, and returned it to her father’s succession (except insofar as rights between her and her mother were concluded by earlier litigation, Elrod v. Le Ny, La.App.1966, 193 So.2d 299).
In the original suit in 1967, her mother, although named a defendant, had admitted the allegations of community and simulation, and joined in the prayer of the plaintiffs. Plaintiffs were the father’s succession and two grandchildren, issue of a then deceased son of the father’s first marriage. Appellant’s mother had herself previously sought, unsuccessfully, to have the transfers to the daughter declared simulations in Elrod v. LeNy, supra.
The basis of appellant’s suit for nullity is that appellant’s mother and father were not married until 1957, and “this information was withheld from the court.” The properties, acquired in 1926 and 1956 by Mrs. Elrod (Elrod joining to admit para-phernality) would thus not have belonged to a community not established until 1957. Elrod’s succession and grandchildren would have had no interest to attack the mother-daughter transfers, and the entire judgment would have been null due to the fraud and ill practice of the mother as a witness; C.C.P. art. 2004; see reporters’ Comment (c).
At the 1967 trial the mother testified, in response to only one question (repeated once on cross-examination), that she and Elrod married in 1922.
At the 1970 trial of the nullity suit, she testified she was not married to Elrod until 1957. A certified copy of the 1957 Mississippi marriage record was produced. There was also introduced evidence casting doubt on the validity of any 1922 marriage, the strongest of which was the record of a proceeding initiated in 1921, in which Elrod testified in 1924 when he obtained a divorce from his first wife. Elrod’s participation in the 1924 divorce would support the conclusion that any good faith at the time of a 1922 marriage on the part of Elrod (through whom his succession and grandchildren claim), and the consequent civil effects of a putative marriage in his favor, C.C. arts. 117, 118, would have ceased to exist prior to the 1926 acquisition; Evans v. Eureka Grand Lodge, 149 So. 305 (La.App.1933).
But there was no concealment by Mrs. Elrod of the 1957 marriage, nor of its purpose to cure doubt as to the validity of the 1922 marriage. Although these matters were not put in evidence in the 1967 trial, in pre-trial discovery depositions she had volunteered rather than concealed them. At the first deposition, asked when she and Elrod married, she immediately responded “twice”: first, November 6, 1922 and second, “Oh, I think about 19 — I’m not sure. The first time I remember. The second was in Mississippi because we were afraid the divorce was not final or something. We were afraid on that account and so, we married again in Mississippi”. (She further said they both believed the divorce was final at the time of their 1922 marriage.) At the second deposition she testified the second marriage occurred in “1959, I think, or ’57”.
*696 Accordingly there could be no nullity based on concealment of possible invalidity of the first marriage; there was no such concealment.
There could thus only be fraud or ill practice in Mrs. Elrod’s testimony of a 1922 marriage if in fact there then was not even a marriage ceremony.
To prove this negative, the only possible direct evidence appellant could offer was the testimony of her mother that no such marriage occurred.[1]
The 1957 marriage might suggest there was no earlier marriage. But it could also suggest, as Mrs. Elrod earlier testified, only that there was doubt of the validity of an eatflier marriage.
The fact that one divorce was not obtained until 1924 (assuming Elrod’s first wife had not already divorced him in other proceedings) might also suggest Elrod would not have gone through a marriage ceremony in 1922. But Mrs. Elrod testified at her first.deposition that both he and she believed in 1922 he was already divorced and that they did marry in 1922.
Thus Mrs. Elrod’s most recent testimony that she and Elrod were not married at all in 1922 is the only real evidence that there was no ceremony; all other evidence consistent with that conclusion is equally consistent with her earlier testimony that a ceremony was held, although its validity later became questioned.
The question before us now is not whether the earlier judgment was incorrect but whether it was obtained by fraud or ill practice; not simply whether there was a 1922 marriage, but whether the earlier determination of that question was the result of deliberately false testimony by Mrs. Elrod.
We have, from the evidence before us, no way of telling whether Mrs. Elrod was lying then or is lying now. The burden of proof is appellant’s. The evidence is insufficient to discharge that burden.
The judgment is affirmed.

. Absence of documentary evidence, that a 1922 marriage was recorded or was not, is alleged to be due to lack of diplomatic relations with Cuba, where the marriage was said to have occurred.